**UNITED STATES DISTRICT COURT**
**DISTRICT OF CONNECTICUT**

| | | |
|---|---|---|
| LISA B.,[1] *Plaintiff,* | ) | 3:23-CV-219 (SVN) |
| v. | ) | |
| MARTIN O'MALLEY, COMMISSIONER OF SOCIAL SECURITY,[2] | ) | |
| *Defendant*. | ) | March 26, 2024 |

**RULING ON PLAINTIFF'S MOTION TO REVERSE AND DEFENDANT'S MOTION TO AFFIRM DECISION OF COMMISSIONER**

Sarala V. Nagala, United States District Judge.

In this social security benefits case, the Administrative Law Judge ("ALJ") found that Plaintiff was not entitled to Disability Insurance Benefits ("DIB") because she was not disabled during the relevant period. Plaintiff appeals the Commissioner's denial of benefits, arguing that: (1) the ALJ did not adequately develop the administrative record; (2) the ALJ erred in analyzing Plaintiff's chronic pain/combination of impairments; and (3) that the ALJ's step four findings are unsupported. The Commissioner has filed a motion to affirm the ALJ's decision, arguing that the ALJ did not so err.

For the reasons that follow, the Court finds that the ALJ's decision is supported by substantial evidence and free of legal errors. For the following reasons, Plaintiff's motion to

---

[1] In opinions issued in cases filed pursuant to § 205(g) of the Social Security Act, 42 U.S.C. § 405(g), in order to protect the privacy interest of social security litigants while maintaining public access to judicial records, this Court identifies and references any non-government party solely by first name and last initial. *See* Standing Order – Social Security Cases (D. Conn. Jan. 8, 2021).

[2] On December 20, 2023, Martin O'Malley replaced Kilolo Kijakazi as Commissioner of the Social Security Administration. Pursuant to Federal Rule of Civil Procedure 25(d), the Clerk of Court is directed to substitute Martin O'Malley for Kilolo Kijakazi in this action.

reverse, or in the alternative, remand, is DENIED, and the Commissioner's cross-motion to affirm the decision of the Commissioner is GRANTED.

**I. BACKGROUND**

The Court assumes familiarity with the procedural and medical history, as summarized by Plaintiff, ECF No. 17-1 at 1–13, which the Court adopts and incorporates by reference. The Court also assumes familiarity with the five sequential steps used in the analysis of disability claims, the ALJ's opinion, and the record.[3] The Court only cites those portions of the record and the legal standards necessary to explain its ruling.

**II. LEGAL STANDARD**

It is well-settled that a district court will reverse the decision of the Commissioner only when it is based upon legal error or when it is not supported by substantial evidence in the record. *E.g.*, *Greek v. Colvin*, 802 F.3d 370, 374–75 (2d Cir. 2015) (*per curiam*); 42 U.S.C. § 405(g) ("The findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive . . . ."). "'Substantial evidence' is 'more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Talavera v. Astrue*, 697 F.3d 145, 151 (2d Cir. 2012) (quoting *Richardson v. Perales*, 402 U.S. 389, 401 (1971)).

"In determining whether the [Commissioner's] findings were supported by substantial evidence, 'the reviewing court is required to examine the entire record, including contradictory evidence and evidence from which conflicting inferences can be drawn.'" *Selian v. Astrue*, 708 F.3d 409, 417 (2d Cir. 2013) (*per curiam*) (quoting *Mongeur v. Heckler*, 722 F.2d 1033, 1038 (2d Cir. 1983) (*per curiam*)). "Under this standard of review, absent an error of law, a court must

[3] Citations to the administrative record, ECF No. 13, appear as "Tr." followed by the page number appearing in the bottom right-hand corner of the record.

uphold the Commissioner's decision if it is supported by substantial evidence, even if the court might have ruled differently." *Campbell v. Astrue*, 596 F. Supp. 2d 446, 448 (D. Conn. 2009). The Court must therefore "defer to the Commissioner's resolution of conflicting evidence," *Cage v. Comm'r of Soc. Sec.*, 692 F.3d 118, 122 (2d Cir. 2012), and reject the Commissioner's findings of fact "only if a reasonable factfinder would *have to conclude otherwise*," *Brault v. Soc. Sec. Admin., Comm'r*, 683 F.3d 443, 448 (2d Cir. 2012) (emphasis in original) (quoting *Warren v. Shalala*, 29 F.3d 1287, 1290 (8th Cir. 1994)). Stated simply, "[i]f there is substantial evidence to support the [Commissioner's] determination, it must be upheld." *Selian*, 708 F.3d at 417.

**III. DISCUSSION**

The Court finds that the ALJ did not err by failing to further develop the administrative record or otherwise.

A. ALJ's Duty to Develop the Administrative Record

The Court first rejects Plaintiff's argument that the ALJ erred in his duty to develop the record by declining to elicit medical source statements detailing function-by-function analysis from two of her treating physicians and her rehabilitation stays after surgery and COVID-19 hospitalization. Primarily, Plaintiff contends the ALJ erred in failing to obtain medical source statements from Dr. Luis Enrique Kolb, who performed cervical spine surgery on Plaintiff, and Dr. Ghenekaro Esin, who treated Plaintiff at Yale Primary Care Center and Cornell Scott Hill Health from 2019 to 2022.

Because of the nonadversarial nature of a social security benefits proceeding, "an ALJ is under an affirmative obligation to develop a claimant's medical history." *Rosa v. Callahan*, 168 F.3d 72, 79 (2d Cir. 1999). This duty is "heightened" when the claimant is proceeding *pro se*. *Moran v. Astrue*, 569 F.3d 108, 113 (2d Cir. 2009). However, "where there are no obvious gaps

in the administrative record, and where the ALJ already possesses a 'complete medical history,' the ALJ is under no obligation to seek additional information in advance of rejecting a benefits claim." *Rosa*, 168 F.3d at 79 n.5 (quoting *Perez v. Chater*, 77 F.3d 41, 58 (2d Cir. 1996)).

Failure to obtain the medical opinion of a treating source is not "per se error." *Alex C. v. Kijakazi*, No. 3:22-CV-117 (MPS) (RMS), 2023 WL 2865103, at *14 (D. Conn. Feb. 16, 2023), *report and recommendation adopted*, 2023 WL 2706232 (D. Conn. Mar. 30, 2023) (quoting *Delgado v. Berryhill*, No. 3:17-CV-54 (JCH), 2018 WL 1316198, at *8 (D. Conn. Mar. 14, 2018)). In *Guillen v. Berryhill*, 697 F. App'x 107, 108 (2d Cir. 2017) (summary order), the Second Circuit held that an ALJ's failure to obtain a medical source opinion from a *pro se* claimant's treating physician, or to encourage the claimant to do so, may constitute reversible error when "the medical records obtained by the ALJ do not shed light on [claimant's] residual functioning capacity, and the consulting doctors did not personally evaluate [claimant]." *See id.* (distinguishing *Tankisi v. Comm'r of Soc. Sec.*, 521 F. App'x 29, 34 (2d Cir. 2013)). It is insufficient if the "medical records discuss [claimant's] illnesses and suggest treatment for them, but offer no insight into how [claimant's] impairments affect or do not affect [their] ability to work, or [claimant's] ability to undertake her activities of everyday life." *Id.* at 109.

More recently, in *Rivers v. Kijakazi*, No. 21-1935-cv, 2023 WL 2485467, at *2 (2d Cir. Mar. 14, 2023) (summary order), the Second Circuit found reversible error when the "ALJ was on notice that [claimant] had three treating physicians . . . and that [claimant] had seen one of the three . . . as recently as a few weeks prior," but "did not contact any of these treating physicians for their medical opinion." The Second Circuit found that substantial evidence did not otherwise support the ALJ's finding because he relied on an "internally inconsistent report" from a state agency reviewer. *Id.* at *2 (quoting report's inconsistent statement that claimant "was unable to

stand and walk on heels and toes. She was unable to squat. Can walk on heels and toes without difficulty. Squat full."). Without a competent medical opinion, the ALJ improperly relied on his own lay opinion which contradicted other medical evidence. *See id.* at *3.

Notably, the Second Circuit has yet to address an ALJ's obligation to obtain and consider medical source opinions after the treating physician rule, which required ALJs to defer to opinions from treating sources, was repealed in 2017. *See Alex C.*, 2023 WL 2865103 at *15. "Since a medical source statement was likely to be afforded controlling weight under the 'treating physician rule,' an ALJ's failure to secure one was particularly problematic when this rule was in effect." *Id.* Now, however, an ALJ "will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s), including those from your medical sources." 20 C.F.R. § 404.1520c(a). Medical opinions are one of several types of evidence that an ALJ may consider in assessing a claimant's RFC. *See* SSR 96-8p, 1996 WL 374184, at *5 (July 2, 1996). Regardless of this change, however, the rationale of developing the record in a nonadversarial setting applies, and *Guillen* and *Rivers* provide valuable guidance.

Applied to this case, the Court cannot find the ALJ's failure to obtain a treating source opinion or the rehabilitation records was reversible error or that there is any "gap" in the record. First, during the hearing on Plaintiff's claim, the ALJ asked Plaintiff's then-counsel whether "there is anything outstanding that needs to be admitted," because "the record seem[ed] to be a little thin . . . ." Tr. 4194. Initially, Plaintiff's counsel responded no. *Id.* However, after Plaintiff testified to additional treatment at Yale Primary Care, the ALJ left the record open for 30 days for additional record evidence on counsel's request. *Id.* 4194–95. Counsel did not mention that any records were missing from Drs. Kolb or Esin, or for Plaintiff's rehabilitation stays at Grimes Health Care Center, the Hospital for Special Care, or Hartford Home Health Care. *See id.* While the record

was held open, Plaintiff did not submit any medical source statements from Drs. Kolb or Esin, nor any records from her two rehabilitation periods. Under these circumstances, the ALJ complied with his obligation to develop the record. *See, e.g., Brown v. Colvin*, No. 3:14-cv-1784 (WIG), 2016 WL 2944151, *3 (D. Conn. May 20, 2016) ("When an ALJ holds open the record, and a claimant fails to provide additional evidence, the ALJ will be found to have fulfilled [his] duty to develop the record.") (collecting cases).

Even if this procedural history is not dispositive, here the ALJ had sufficient records from which he could determine Plaintiff's RFC. *See* 20 C.F.R. § 404.1545(a)(3) (explaining that the RFC is determined "based on all of the relevant medical and other evidence"). The ALJ's decision is supported by a lengthy medical record of more than 4,000 pages, replete with observations on Plaintiff's impairments and conditions both from state consultants and from Plaintiff's own treating physicians. The ALJ catalogued the medical evidence, including records relating to Plaintiff's cervical spine and related problems both before and following her 2017 car accident. Tr. 4172–88. He further relied on the reports of two state agency consultants and Plaintiff's medical record, which included treatment notes from claimant's other doctors and a medical source statement from one of Plaintiff's treating physicians. *E.g.*, Tr. at 4178 (noting the opinions of state consultants Dr. Foster and Dr. Wurzel and a medical source statement from Dr. Mastroianni). The Court therefore concludes that the ALJ did not err in failing to obtain medical source statements from Drs. Kolb or Esin.

Moreover, in light of the voluminous record documenting Plaintiff's treatment and up-to-date conditions, records of Plaintiff's periods in rehabilitation appear to have little to no bearing on the question of whether Plaintiff's physical impairments rendered her disabled at the time of the ALJ's decision, so any failure to obtain them was inconsequential. *See Crespo v. Comm'r of*

*Soc. Sec.*, No. 3:18-cv-435 (JAM), 2019 WL 4686763, at *5 (D. Conn. Sept. 25, 2019) (rejecting argument that record was insufficiently developed where claimant had not shown the "absence of meaningful records"). In addition, as the Commissioner explains, Plaintiff's discharge notes from Grimes Health are already in the record. Tr. 363–66. Further, there is no indication why record evidence concerning Plaintiff's COVID-19 related rehabilitation stay in 2020 would be material, given the extensive record evidence of Plaintiff's post-COVID-19 condition in 2021 and 2022.

The ALJ therefore did not err by failing to sufficiently develop the record.

B. ALJ's Chronic Pain/Combination of Impairments Analysis

The Court finds that the ALJ did not err in assessing Plaintiff's pain in the RFC analysis because the RFC is supported by substantial evidence on the record.

"Before [the ALJ moves] from step three to step four, [he or she] assess[es] [plaintiff's] residual functional capacity [("RFC")] . . . ." 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). A plaintiff's RFC is "the most [she] can still do despite [her] limitations" and is determined "based on all the relevant evidence in [the] case record," namely, "all of the relevant medical and other evidence." 20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1). "[A]n individual's RFC 'is an assessment of an individual's ability to do sustained work-related physical and mental activities in a work setting on a regular and continuing basis.'" *Cichocki v. Astrue*, 729 F.3d 172, 176 (2d Cir. 2013) (*per curiam*) (quoting SSR 96–8p, 1996 WL 374184, at *1 (July 2, 1996)). The Court "must affirm an ALJ's RFC determination when it is supported by substantial evidence in the record." *Barry v. Colvin*, 606 F. App'x 621, 622 n.1 (2d Cir. 2015) (summary order) (citing 42 U.S.C. § 405(g); *Perez,* 77 F.3d at 46).

To the extent Plaintiff believes the ALJ did not adequately address Plaintiff's complaints about her pain, the Court's review demonstrates the ALJ did consider Plaintiff's pain. As part of

the RFC analysis, the ALJ frequently noted Plaintiff's pain. *E.g.*, Tr. 4171–72 ("she sometimes cannot sleep because of pain," "she cannot get out of bed because of back pain," "pain in her hands," "reaching straightforward would cause her a little bit of pain and that her pain would increase the more she did it," "her pain is always at a level 10 and that is why her attention is always on the pain"). In this context, the ALJ properly considered Plaintiff's pain as it impacted her ability to perform basic work activities. That the ALJ weighed evidence of Plaintiff's pain against medical findings that Plaintiff's pain was manageable, *e.g.*, Tr. 4176 (noting that Plaintiff's primary care physician found in September of 2021 that Plaintiff's pain had improved and was manageable under her current regime), does not constitute error. In fact, it is the ALJ's duty to weigh the credibility of evidence. *See Cichocki v. Astrue*, 534 F. App'x 71, 75 (2d Cir. 2013) (summary order) ("It is the role of the Commissioner, not the reviewing court, 'to resolve evidentiary conflicts and to appraise the credibility of witnesses,' including with respect to the severity of a claimant's symptoms.") (quoting *Carroll v. Sec'y of Health & Hum. Servs.*, 705 F.2d 638, 642 (2d Cir. 1983)).

To the extent that Plaintiff challenges the ALJ's determination that Plaintiff's pain did not rise to the level of disability on its own, ECF No. 17-1 at 26–27, substantial evidence in the record supports the ALJ's decision. While the ALJ acknowledged Plaintiff's pain, the ALJ also noted that the "record does not support the claimant's allegations to the extent alleged." Tr. 4177. For example, the ALJ noted that after Plaintiff's spine surgery in 2018, her pain, weakness, and numbness had "significantly improved by at least early 2019." *Id.* Further, the ALJ found that "physical examinations in 2021 and 2022" were "generally normal." *Id.* The medical evidence in the record supports these findings. The ALJ noted that Plaintiff's physician had explained that some of Plaintiff's pain symptoms were the result of "deconditioning while hospitalized," *id.* 4175,

and that, by September 7, 2021, Plaintiff's "primary care provider reported that the claimant's pain had significantly improved," and that "[h]er pain was stable on her current pain regimen." *Id.* 4176. Thus, far from ignoring Plaintiff's complaints about her pain, the ALJ acknowledged this pain and her medical history that indicated that the pain was improving. Weighing the evidence in the record, the ALJ found that, rather than rendering her disabled, Plaintiff's symptoms of pain were effectively moderated with treatment. Thus, substantial evidence on the record supports the ALJ's finding that Plaintiff's pain did not rise to the level of a disability on its own.

C. <u>The ALJ Did Not Err at Step Four</u>

Finally, the Court disagrees with Plaintiff that the ALJ erred at Step Four when the ALJ found that Plaintiff is capable of performing her past work.

Under the regulations, if Plaintiff can return to her past relevant work, "either as [she] actually performed it or as generally performed in the national economy," then she is not disabled. *See* 20 C.F.R. § 404.1560(b)(2). The test for actual performance of Plaintiff's past relevant work is "[w]hether the claimant retains the capacity to perform the particular functional demands and job duties peculiar to an individual job as he or she actually performed it." SSR 82-61, 1982 WL 31387, at *1 (S.S.A. 1982). The test for general performance is "[w]hether [she] retains the capacity to perform the functional demands and job duties of the job as ordinarily required by employers throughout the national economy." *Id.* at *2. In making these findings, the ALJ may rely on job descriptions from the Dictionary of Occupational Titles ("DOT") as to how jobs are "usually performed in the national economy." *Id.* At this step, Plaintiff "has the burden to show an inability to return to her previous specific job and an inability to perform her past relevant work generally." *Jasinski v. Barnhart*, 341 F.3d 182, 185 (2d Cir. 2003). "The ALJ is not typically required to find that the claimant can perform the past relevant work as actually performed if he

finds that the claimant can perform the job as generally performed." *Delgado v. Berryhill*, No. 3:17-cv-54 (JCH), 2018 WL 1316198, at *17 (D. Conn. Mar. 14, 2018).

The Court disagrees with Plaintiff's argument that the ALJ erred at step four because the ALJ provided the vocational expert ("VE") with a faulty hypothetical question. ECF No. 17-11 at 31. The ALJ's hypothetical to the VE is supported by substantial evidence on the record.

First, the Court disagrees that the ALJ's hypothetical was given to the VE without evidence as to Plaintiff's ability to perform her past work. ECF No. 17-1 at 29–33. Plaintiff claims the ALJ should have procured additional medical source statements in developing Plaintiff's RFC. *Id.* at 32. However, the Court has already addressed why this argument is unpersuasive.

Further, the Court finds that the hypothetical is in fact supported by substantial evidence on the record. "When the hypothetical posed to the vocational expert is based on a residual functional capacity finding that is supported by substantial evidence, the hypothetical is proper and the ALJ is entitled to rely on the vocational expert's testimony." *Snyder v. Colvin*, 667 F. App'x 319, 321 (2d Cir. 2016) (summary order) (citing *Dumas v. Schweiker*, 712 F.2d 1545, 1554 (2d Cir. 1983); *Salmini v. Comm'r of Soc. Sec.*, 371 F. App'x. 109, 114 (2d Cir. 2010) (summary order)). That is exactly what the ALJ did here. *See* Tr. 4180; *see also* Tr. 4214–18 (hearing transcript wherein the ALJ posed the relevant hypotheticals to the VE based on Plaintiff's RFC). Thus, the hypothetical posed to the VE is supported by substantial evidence precisely because it was based on the ALJ's properly formulated RFC. Accordingly, the ALJ did not err for this reason.

Second, the Court disagrees that the ALJ's hypothetical to the VE was faulty because the ALJ did not inquire into the actual physical demands of Plaintiff's past work. ECF No. 17-1 at 31. The ALJ questioned Plaintiff about the requirements of her jobs as she actually performed them. Tr. 4197–99 (ALJ's examination of Plaintiff). The ALJ asked Plaintiff about her actual

work as a security guard, *id.* 4200, and as a phlebotomist, *id.* 4198, 4201. For instance, when questioning Plaintiff about her work as a phlebotomist, the ALJ asked her how much of her work involved sitting, *id.* 4198, 4202, and lifting or push heavy objects, *id.* 4199, 4202. As to Plaintiff's work as a security guard, the ALJ inquired as to the type of building Plaintiff patrolled, *id.* 4200, the nature of her duties as to walking and sitting, *id.*, and whether the work involved heavy lifting, *id.* 4201. The ALJ also questioned the VE about Plaintiff's past work as it is generally performed in the national economy with reference to the DOT. *Id.* 4213–20. Based on Plaintiff's testimony, the RFC, and the DOT definitions for the work required of a security guard and a phlebotomist, the ALJ then provided a hypothetical question to the VE. *Id.* 4214–15. Accordingly, because the ALJ properly questioned Plaintiff about her actual work, and the VE relied on DOT definitions of Plaintiff's work as it is generally performed, the ALJ's hypothetical to the VE is supported by substantial evidence on the record. Thus, the ALJ did not err in providing hypotheticals to the VE because the ALJ's hypotheticals are supported by substantial evidence on the record.

More generally, the ALJ's conclusion at step four that Plaintiff was capable of performing light work is supported by substantial evidence. The ALJ properly relied upon the medical findings of the state agency consultants who had reviewed the medical evidence in the record in October of 2019 and January of 2020. Both consultants, Dr. Foster and Dr. Wurzel, concluded that Plaintiff could do light work. Tr. 68–79 (Dr. Foster's findings that that Plaintiff can perform light work like her past work as a phlebotomist); *id.* 81–94 (Dr. Wurzel's similar conclusions). In finding their opinions persuasive, the ALJ concluded that they were supported by Plaintiff's surgical fusion surgeries and her need for trigger point injections. Tr. 4178;[4] *see also, e.g.*, *id.* 258–59

[4] The ALJ appropriately found that Dr. Esin's undated letter, which opined generally that Plaintiff "should be greatly considered for disability" due to her medical conditions, was insufficiently specific as to any particular limitations to be persuasive. Tr. 4179.

(indicating Plaintiff's pain improved after trigger point injections in the trapezius muscle). That these consultants did not personally examine Plaintiff is not fatal. *See* 20 C.F.R. § 404.1513a(b)(1) (recognizing that ALJs must consider consultants' opinions because they "are highly qualified and experts in Social Security disability evaluation").

The ALJ acknowledged that Plaintiff complained of pain and weakness after her surgery, but also noted that treatment records show those symptoms significantly improved by at least 2019. Tr. 4177 (citing *id.* 257) (noting "full strength throughout bilateral upper extremes" and "[f]ull painless range of motion of the bilateral shoulders"). The ALJ further found that, after Plaintiff complained of hypersensitivity and bilateral hand numbness and noted she was using a walker in the summer of 2020, *see, e.g.*, Tr. 4177 (citing *id.* 4520 (medical records)), her physical examinations in 2021 and 2022 were generally normal, and Plaintiff was ambulatory with no gait problems or assistive devices necessary, *id*. 4177*; see also, e.g.*, *id*. 4939–40 (medical record from July 19, 2021, noting that Plaintiff was ambulatory without an assistive device); *id.* 4983 (August 25, 2022, medical record noting that Plaintiff "is able to walk"). In addition, Plaintiff was able to independently perform various activities of daily living. *See e.g.*, Tr. 4950 (September 7, 2021, medical record noting that Plaintiff has no issues with various activities of daily living); *id.* 4972 (April 25, 2022, medical record noting the same). Overall, substantial evidence in the record supports the ALJ's conclusion that Plaintiff could do light work with certain postural and environmental limitations, and limitations on overhead reaching.

## IV. CONCLUSION

For the reasons described herein, Plaintiff's motion to reverse is DENIED and Defendant's motion to affirm is GRANTED. The Clerk is directed to enter judgment for the Commissioner and close this case.

**SO ORDERED** at Hartford, Connecticut, this 26th day of March, 2024.

*/s/ Sarala V. Nagala*
SARALA V. NAGALA
UNITED STATES DISTRICT JUDGE